UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY GENE LEWIS,<br><br>    Plaintiff,<br><br>  v.<br><br>ORRY MARCIANO, et al.,<br><br>    Defendants. | Case No. EDCV 17-0181 SVW (SS)<br><br>**MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

**I.**

**INTRODUCTION**

On February 1, 2017, Gregory Gene Lewis ("Plaintiff"), a California state prisoner proceeding pro se, filed a civil complaint pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"); the Civil Rights Act, 42 U.S.C. § 1983; and the California Government Claims Act, Cal. Gov't Code §§ 905 et seq. ("CGCA").[1] (Dkt. No. 1).

---

[1] The short title "Government Claims Act" has been used interchangeably in California cases with the title "Tort Claims Act" to refer to the statutory scheme for presenting claims for money damages against state and local governmental entities.

Congress mandates that district courts perform an initial screening of complaints in civil actions where a prisoner seeks redress from a governmental entity or employee. 28 U.S.C. § 1915A(a). This Court may dismiss such a complaint, or any portion thereof, before service of process if the complaint (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1-2); see also Lopez v. Smith, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc). For the reasons stated below, the Complaint is DISMISSED with leave to amend.[2]

## II.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff sues three Chuckawalla State Prison ("CSP") employees: (1) Orry Marciano, a "physician assistant/primary care physician" ("Marciano"); (2) Ms. Beatres, a nurse ("Beatres"); and (3) Kimberly Seibel, the warden ("Seibel"). All Defendants are sued in both their individual and official capacities. (Complaint ("Compl.") at 3).

\\

\\

---

However, because the California Supreme Court has expressed a preference for the title "Government Claims Act," the Court will adopt that usage. See City of Stockton v. Superior Court, 42 Cal. 4th 730, 741-42 (2007).

[2] A magistrate judge may dismiss a complaint with leave to amend without the approval of a district judge. See McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

Plaintiff alleges that he has been disabled for the past twelve years following a gunshot wound to the leg. (Id. at 6). As a result of his injury, Plaintiff walks with a limp and needs to use a cane. (Id.). However, prison staff took Plaintiff's cane away from him and nurse Beatres "denied [Plaintiff's] disability" by refusing to return it. (Id. at 5).

In 2016, CSP staff assigned Plaintiff to work as a kitchen "lineback," which requires him to carry heavy pans and trays and push heavy carts. (Id.). In light of his disability and age (he is sixty-three years old), this job is difficult for Plaintiff to perform. Clinic staff, correctional officers, and the cook supervisory staff "ignored the operational procedures" in assigning him this job. (Id.).

At some unidentified time, Marciano, Plaintiff's primary health care provider, increased Plaintiff's dosage of Simvastatin from 20 to 40 milligrams, which Plaintiff believes caused him to suffer a mild stroke and heart failure.[3] (Id. at 5-6). Plaintiff collapsed and was taken to the hospital to receive treatment for the stroke. (Id. at 6). Following this incident, Plaintiff has been physically and mentally traumatized. His body has deteriorated because his medical needs have been "denied and delayed." (Id.).

---

[3] According to an attachment to the Complaint, Simvastatin "reduces levels of 'bad' cholesterol . . . and triglycerides in the blood, while increasing levels of 'good' cholesterol. . . . Simvastatin is also used to lower the risk of stroke, heart attack, and other heart complications . . . ." (Compl. at 18) (continuous pagination).

The only allegation against Warden Seibel is that "she is not doing her responsibility to instruct or educate her staff to acknowledge inmates that are under the [ADA]." (Id. at 5).

Plaintiff claims that Defendants' actions constituted "discrimination of [his] disability" under the ADA, citing Armstrong v. Davis.[4] (Id. at 5). Plaintiff also contends that Defendants violated his constitutional rights by subjecting him to "cruel and unusual punishment" and by "delaying" his "medical needs [sic]." (Id. at 5-6). In addition, Plaintiff asserts that Marciano is liable for "negligence [in] prescribing medicine that cause[d] mild stroke [sic] and heart failure . . . ." (Id.). Finally, Plaintiff alleges, without further explanation or citation, that Defendants violated Title 15 of the California Code of Regulations. (Id.). The Complaint does not specifically request monetary or injunctive relief. (See id. at 5-6).

**III.**

**DISCUSSION**

Under 28 U.S.C. § 1915A(b), the Court must dismiss the Complaint due to pleading defects. However, the Court must grant a pro se litigant leave to amend his defective complaint unless

---

[4] Plaintiff does not provide a case citation, but is presumably referring to Armstrong v. Davis, 275 F.3d 849, 879 (9th Cir. 2001), abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504-05 (2005); see also Nordstrom v. Ryan, 762 F.3d 903, 911 (9th Cir. 2014) (recognizing partial abrogation). Armstrong affirmed, in part, an injunction requiring the California Department of Corrections to provide ADA training to its staff and to track inmates with disabilities. Armstrong, 275 F.3d at 875-76.

4

"it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). For the reasons discussed below, it is not "absolutely clear" that at least some of the defects of Plaintiff's Complaint could not be cured by amendment. The Complaint is therefore DISMISSED with leave to amend.

**A.　The Complaint Violates Federal Rule of Civil Procedure 8**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). Rule 8 may be violated when a pleading "says too little," and "when a pleading says too much." Knapp v. Hogan, 738 F.3d 1106, 1108 (9th Cir. 2013) (emphasis in original).

Here, the Complaint violates Rule 8 because Plaintiff does not clearly identify the nature of each of the legal claims he is bringing, the specific facts giving rise to each claim, or the specific Defendant or Defendants against whom each claim is brought. Without more specific information, Defendants cannot respond to the Complaint. See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (a complaint violates Rule 8 if a defendant would have difficulty

understanding and responding to the complaint). Moreover, because Plaintiff is not required to provide evidence supporting his claims at this stage of the litigation, the exhibits attached to the Complaint appear unnecessary. Additionally, the Complaint must state what relief Plaintiff is seeking by this action. Accordingly, the Complaint is dismissed, with leave to amend.

**B.   Plaintiff Fails To State A Claim Under the ADA**

Plaintiff fails to state a claim under the ADA, which broadly prohibits "public entities" from discriminating against disabled individuals in the provision of public services. Fortyune v. City of Lomita, 766 F.3d 1098, 1101 (9th Cir. 2014); see also Castle v. Eurofresh, Inc., 731 F.3d 901, 910 (9th Cir. 2013) ("Title II [of the ADA] applies to the operation of state prisons."). To achieve compliance with the Act, "Title II authorizes suits by private citizens for money damages against public entities that violate § 12132." United States v. Georgia, 546 U.S. 151, 154 (2006).

To state a claim under § 12132, a plaintiff must allege that:

> "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;

and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010) (quoting McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004)). To demonstrate a disability under the ADA, a plaintiff must show that he has been diagnosed with a condition that substantially limits his life activities. Bragdon v. Abbott, 524 U.S. 624, 631 (1998); see also Weaving v. City of Hillsboro, 763 F.3d 1106, 1111 (9th Cir. 2014) (definition of disability under the ADA "'shall be construed in favor of broad coverage'") (quoting 42 U.S.C. § 12102(4)(A)).

"The ADA prohibits discrimination because of disability, not inadequate treatment for disability." Simmons, 609 F.3d at 1022 (emphasis added). Insufficient medical care does not state a claim under the ADA. Id.; see also Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . The ADA does not create a remedy for medical malpractice."); Elbert v. N.Y. State Dept. of Corr. Servs., 751 F. Supp. 2d 590, 595 (S.D. N.Y. 2010) ("Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability.") (citing cases); Carrion v. Wilkinson, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004) (complaint alleging that prison failed to provide inmate with diabetic diet did not state ADA claim in the absence of allegations that prison officials

7

denied the inmate "the benefits of any services, programs, or activities provided for other non-disabled inmates, or that they subjected him to discrimination because of his diabetes").

Plaintiff's vague and conclusory accusations of "discrimination" do not state a claim under the ADA. Plaintiff states that Marciano "discriminat[ed]" against "his disability" by "prescribing [the] wrong medicine," thereby causing him to suffer a mild stroke. (Compl. at 5). This is a claim for inadequate medical care, not discrimination, and does not identify the "public services" to which Plaintiff was denied access because of his disability.

Plaintiff further claims that Beatres "denied [his] disability" by failing to "accomodat[e] [his] request" for the return of his cane. (Id.). The "denial of mobility-assistance devices to persons unable to physically function without them" may violate Title II where the deprivations force disabled prisoners "into the vulnerable position of being dependent on other inmates to enable them to obtain basic services, such as meals, mail, showers, and toilets." Armstrong v. Brown, 732 F.3d 955, 960 (9th Cir. 2013). Here, however, Plaintiff does not allege any facts showing that the denial of a cane forced him to rely on the assistance of other inmates to get to food, showers, toilets, or other prison services. Indeed, the allegations that Plaintiff works in the kitchen strongly suggest that he is not dependent on a cane to move around the prison.

Finally, Plaintiff's summary claim that Seibel failed to train her staff to "acknowledge" prisoners protected under the ADA similarly does not state an ADA claim. "The Ninth Circuit has not set out a standard for failure-to-train claims under the ADA." Green v. Tri-Cty. Metro. Transp. Dist. of Oregon, 909 F. Supp. 2d 1211, 1220 (D. Or. 2012). Even assuming, without deciding, that failure to train claims are cognizable under the ADA, Plaintiff has not shown how Seibel's alleged failure to train resulted in discrimination depriving him of the ability to participate in a program or service offered to non-disabled prisoners. Accordingly, Plaintiff's ADA claims are dismissed, with leave to amend.

**C.  Plaintiff Fails To State A Cruel And Unusual Punishment Claim**

Plaintiff broadly claims that he was subjected to "cruel and unusual punishment" causing damage to his body in violation of his constitutional rights. (Compl. at 6). It is not clear exactly which acts form the basis of Plaintiff's constitutional claim, which Defendant or Defendants committed them, or what specific harm they caused.

Infliction of suffering on prisoners that is "totally without penological justification" violates the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 346 (1981). Only "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks and citation omitted). The punishment must constitute "shocking and barbarous

treatment." Grummett v. Rushen, 779 F.2d 491, 494 n.1 (9th Cir. 1985).

It is possible that Plaintiff may believe that his work assignment as a kitchen lineman constitutes "cruel and unusual punishment" because it requires him to lift heavy trays and pans and push heavy carts. However, the Complaint simply does not provide any facts about this work detail, or Plaintiff's alleged inability to perform the tasks required of him, that would establish "shocking and barbarous treatment" without any penological justification. Additionally, the Complaint does not explain how any of the named Defendants might be liable for any pain Plaintiff suffered as a consequence of his job. Accordingly, Plaintiff's "cruel and unusual" punishment claims are dismissed, with leave to amend.

**D. Plaintiff Fails To Allege A Deliberate Indifference Claim**

It is also possible that Plaintiff may be attempting to state an Eighth Amendment claim based on his allegedly inadequate medical care. To state such a claim, a prisoner must demonstrate that the defendant was "deliberately indifferent" to his "serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also West v. Atkins, 487 U.S. 42, 49 (1988). To establish a "serious medical need," the prisoner must demonstrate that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Jett, 439 F.3d at 1096 (citation omitted).

To establish "deliberate indifference" to a serious medical need, a plaintiff must demonstrate: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." (Id.). Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." (Id.) (citations omitted). The defendant must have been subjectively aware of a serious risk of harm to Plaintiff and must have consciously disregarded that risk. See Farmer v. Brennan, 511 U.S. 825, 828 (1994).

The Complaint fails to state a deliberate indifference claim. First, the Complaint's vague language fails to establish that Plaintiff had a serious medical need. With respect to Marciano, while Plaintiff may have presented with high cholesterol, a not uncommon condition which Marciano attempted to address with Simvastatin, Plaintiff does not allege any facts showing that he had symptoms of any other serious medical condition requiring immediate attention. With respect to Beatres, Plaintiff does not allege any facts showing why his limp from a twelve-year old injury was so serious that the failure to treat it would likely result in significant additional injury or the unnecessary and wanton infliction of pain.

Second, the Complaint does not adequately allege that Marciano or Beatres were subjectively aware of Plaintiff's serious medical need and refused to give him medical attention, putting him at risk

of injury. Marciano attempted to treat Plaintiff's high cholesterol and risk of stroke with Simvastatin, and when Plaintiff collapsed in the kitchen due to a "mild stroke" and heart failure, he was immediately sent by ambulance to the hospital. Similarly, there are no facts showing that Plaintiff's limp was so serious that Beatres must have known it constituted a serious medical condition requiring immediate attention. Indeed, although Plaintiff claims that Beatres did not return his cane, he does not explain how Beatres even knew that he had a limp.

Third, the Complaint does not show that Plaintiff suffered any harm from Defendants' alleged acts or failures to act. Plaintiff's claims that the increased dosage of Simvastatin that Marciano prescribed "caused" his stroke and heart failure are contradicted by the exhibits Plaintiff attached to the Complaint that explain that Simvastatin is used to <u>prevent</u> strokes and heart failure. (Compl. at 18). Plaintiff alleges that Beatres did not give him a cane, but does not allege any specific harm that he suffered as a result. Accordingly, to the extent that Plaintiff is attempting to assert deliberate indifference claims, the claims must be dismissed, with leave to amend.

**E.  Plaintiff Fails To Allege Personal Participation By Warden Seibel In The Alleged Civil Rights Violations**

To demonstrate a civil rights violation, a plaintiff must show either direct, personal participation, or some sufficient causal connection between the official's conduct and the alleged

constitutional violation. See Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011).

Plaintiff's allegations against Warden Seibel are conclusory and vague. Plaintiff merely states that Warden Seibel did not fulfill her responsibility to "instruct[] and educat[e]" CSP staff about the ADA. (Compl. at 3). This allegation does not identify any <u>constitutional</u> right that was violated by Seibel's actions, much less show how Seibel personally and directly participated in the violation. Plaintiff does not allege any facts establishing a connection between Seibel's purported failure to train and the actions taken by Marciano and Beatres. Furthermore, the Ninth Circuit has ruled that due to the comprehensive remedial scheme created by the ADA, a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a state official in his individual capacity to vindicate rights created by Title II of the ADA. Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002). Accordingly, Plaintiff's claims against Seibel are dismissed, with leave to amend. Plaintiff is expressly cautioned that he must not allege claims without a legal and factual basis.

**F. Plaintiff Fails To State A Claim For Violation Of Prison Protocols And Regulations**

Plaintiff appears to claim that Defendants violated his due process rights when they failed to comply with certain unidentified state prison policies, procedures, rules, or regulations. (Compl. at 6). However, the mere violation of state prison regulations is

13

not actionable under § 1983. See Sandin v. Conner, 515 U.S. 472, 484 (1995). To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution . . . committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff fails to show how Defendants violated a right secured under the Constitution simply by violating administrative "operational procedures" or regulations. (Compl. at 6). Accordingly, the Complaint must be dismissed, with leave to amend.

**G.    Plaintiff Fails To State A Claim For Negligence**

Plaintiff may be attempting to bring a state law tort claim for medical negligence against Marciano for changing his Simvastatin prescription. (See Compl. at 6). Negligence is a state law cause of action in tort. However, the Complaint does not satisfy the procedural requirements for alleging state law tort claims against governmental actors.

Under the California Government Claims Act, a plaintiff may not bring an action for damages against a public employee or entity unless he first presents a written claim to the governmental entity within six months of the incident. See Mabe v. San Bernadino Cnty., Dept. of Public Social Servs., 237 F.3d 1101, 1111 (9th Cir. 2001) (CGCA requires the "timely presentation of a written claim and the rejection of the claim in whole or in part" before a plaintiff can file suit); see also Cal. Gov't Code § 945.4 (no suit for money damages may be brought against a public entity until a

written claim is presented to the public entity, and is acted upon or rejected by the board). To the extent that Plaintiff is asserting a state law negligence claim, the Complaint must allege that Plaintiff has complied with the CGCA's claims presentation requirement, or explain why compliance should be excused.[5] Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). Plaintiff does not allege compliance with the claims presentation requirement of the CGCA. Accordingly, the Complaint is dismissed, with leave to amend.

**H. It Is Unclear Whether Plaintiff Has Exhausted His Administrative Remedies**

Plaintiff affirmatively states in the Complaint that he did not file a grievance relating to his current Complaint. (Compl. at 2). Plaintiff explains that he "was not aware on [sic] how they abused [his] rights until finally [he] discovered that they violated [his] constitutional right [sic] by discriminating [his] disability (ADA) [sic]." (Id.). However, Plaintiff also states that the grievance procedure is "completed." (Id.).

\\
\\

---

[5] The CGCA's claim presentation requirement is separate from, and is not satisfied by, internal prison grievance processes. See Hendon v. Ramsey, 528 F. Supp. 2d 1058, 1069-70 (S.D. Cal. 2007) ("Although Plaintiff has demonstrated successfully that he utilized the prison grievance process to exhaust his federal claims by filing an inmate appeal, and has attached documentation in the form of his CDC 602 form and administrative responses, these documents do not satisfy the CTCA [California Tort Claims Act] with respect to his state law negligence claims.").

15

The Prison Litigation Reform Act of 1995 (the "PLRA"), 42 U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before suing over prison conditions in federal court. Booth v. Churner, 532 U.S. 731, 733-34 (2001); see also 42 U.S.C. § 1997e(a) ("No action shall be brought . . . until such administrative remedies as are available are exhausted."). "[F]ederal courts may not consider a prisoner's civil rights claim when a remedy was not sought first in an available administrative grievance procedure." Panaro v. City of North Las Vegas, 432 F.3d 949, 954 (9th Cir. 2005). The PLRA's exhaustion requirement also applies to ADA claims brought by prisoners. O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1061 (9th Cir. 2007) ("[N]othing in the ADA . . . carves out an exception to the PLRA exhaustion requirement."). A prisoner must pursue a remedy through all levels of the prison's grievance process "as long as some action can be ordered in response to the complaint," Brown v. Valoff, 422 F.3d 926, 934 (9th Cir. 2005), regardless of the ultimate relief offered through such procedures. Booth, 532 U.S. at 741.

While exhaustion is normally a precondition to suit, the PLRA does not require exhaustion "when circumstances render administrative remedies 'effectively unavailable.'" Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010). Courts in the Ninth Circuit require "a good-faith effort on the part of inmates to exhaust a prison's administrative remedies as a prerequisite to finding remedies effectively unavailable." Albino v. Baca, 697 F.3d 1023, 1035 (9th Cir. 2012); see also Sapp, 623 F.3d at 823-24 (to fall within an exception to exhaustion requirement, "a prisoner

must show that he attempted to exhaust his administrative remedies but was thwarted").

"[T]he PLRA does not require that a prisoner's federal court complaint affirmatively plead exhaustion." Nunez v. Duncan, 591 F.3d 1217, 1223-24 (9th Cir. 2010) (citing Jones v. Bock, 549 U.S. 199, 212-17 (2007)). Generally, failure to exhaust is an affirmative defense that requires the defendant, following service of the complaint, to prove that a plaintiff failed to exhaust his administrative remedies by showing that "administrative remedies were available and unused." Albino, 697 F.3d at 1035. However, "[a] prisoner's concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003). As a general matter, a prioner-plaintiff's "personal lack of knowledge of the law is insufficient to excuse" a failure to exhaust. Castro v. Unnamed Defendants, 2017 WL 1106024, at *7 (E.D. Cal. Mar. 23, 2017); see also Napier v. Laurel Cnty., Ky., 636 F.3d 218, 222 n.2 (6th Cir. 2011) ("A plaintiff's failure to exhaust [under the PLRA] cannot be excused by his ignorance of the law or the grievance policy.").

Plaintiff is cautioned that if he failed to present any of the instant claims to the prison through the administrative grievance process before filing this lawsuit, Defendants may raise the failure to exhaust as an affirmative defense and may seek dismissal of any unexhausted claims.

**IV.**

**CONCLUSION**

For the reasons stated above, the Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a First Amended Complaint. In any amended complaint, the Plaintiff shall cure the defects described above. **Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the original complaint.** The First Amended Complaint, if any, shall be complete in itself and shall bear both the designation "First Amended Complaint" and the case number assigned to this action. It shall not refer in any manner to any previously filed complaint in this matter.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, <u>a copy of which is attached.</u>** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant details. **<u>It is not necessary for</u>**

**Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation**. Plaintiff is also advised to omit any claims for which he lacks a sufficient factual basis.

Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudices for failure to prosecute and obey court orders pursuant to Federal Rule of Civil Procedure 41(b). **Plaintiff is further advised that is he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience.**

DATED: July 7, 2017

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.