1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10

11   GREGORY GENE LEWIS,              Case No. EDCV 17-0181 SVW (SS)

12              Plaintiff,           **MEMORANDUM DECISION AND ORDER:**

13        v.                         **(1) CONSTRUING "MOTION TO AMEND
                                         COMPLAINT" AS SECOND
14   ORRY MARCIANO, et al.,             AMENDED COMPLAINT (Dkt.
                                         No. 7);  AND
15              Defendants.
                                     **(2) DISMISSING SECOND AMENDED
16                                       COMPLAINT WITH LEAVE TO
                                         AMEND**[1]
17

18                            **I.**

19                       **INTRODUCTION**

20

21        On August 21, 2017, Plaintiff, a California state prisoner

22   proceeding pro se, filed a document titled "Motion to Amend

23   Complaint with Leave to Clarify" in the above-captioned civil

24   rights action.  ("August 21 Motion," Dkt. No. 7).  For the reasons

25   stated below, the Court construes the August 21 Motion as a Second

26

27   _____

     [1] A magistrate judge may dismiss a complaint with leave to amend
28   without the approval of a district judge.  See McKeever v. Block,
     932 F.2d 795, 798 (9th Cir. 1991).

Amended Complaint, and, so construed, DISMISSES the Second Amended Complaint with leave to amend.

Congress mandates that district courts perform an initial screening of complaints in civil actions where a prisoner seeks redress from a governmental entity or employee. 28 U.S.C. § 1915A(a). This Court may dismiss such a complaint, or any portion, before service of process if it concludes that the complaint (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1-2); see also Lopez v. Smith, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc).

## II.

### PRIOR PROCEEDINGS

On February 1, 2017, Plaintiff filed a civil complaint under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq.; the Civil Rights Act, 42 U.S.C. § 1983; and the California Government Claims Act, Cal. Gov't Code §§ 905 et seq. ("Complaint," Dkt. No. 1). The Complaint sued three Chuckawalla Valley State Prison ("CVSP") employees: Orry Marciano, a "physician assistant/primary care physician"; Ms. Beatres, a nurse; and Kimberly Seibel, the warden. (Id. at 3). The Complaint vaguely alleged that Marciano, Beatres, and Seibel violated Plaintiff's rights by, among other things, refusing to return his cane; failing to intervene in his work assignment as a kitchen

2

lineback, which required him to carry heavy pans and trays and push heavy carts; and failing to provide medical care both before and after he suffered a mild stroke and heart failure. (Id. at 5-6).

On July 7, 2017, the Court dismissed the Complaint with leave to amend due to pleading defects. ("ODLA," Dkt. No. 5). The Court's Order required Plaintiff to file a First Amended Complaint correcting the deficiencies in the original Complaint within thirty days if he wished to pursue this action. (Id. at 18).

On July 27, 2017, Plaintiff submitted two documents to the Court: (1) a Notice of Dismissal stating that "only Defendants" are dismissed from the Complaint (the "July 27 Dismissal Notice," Dkt. No. 9),[2] and (2) a civil complaint bearing the caption and case number of the instant case. ("July 27 Complaint," Dkt. No. 11). This pleading once again purported to raise claims under the

---

[2] The July 27 Dismissal Notice did not identify the Defendants to be dismissed by name and appeared incomplete. While Plaintiff's intent in filing the Notice is somewhat unclear, to the extent that Plaintiff was attempting to "dismiss" Defendants named in the original Complaint who were not named in subsequent pleadings, the Notice was unnecessary and confusing.

The filing of an amended complaint supersedes, i.e., entirely supplants or replaces, the original or any prior complaint, which is "treated thereafter as nonexistent." Ramirez v. County of San Bernardino, 806 F.2d 1002, 1008 (9th Cir. 2015) (internal quotation marks and citation omitted); see also Charles Alan Wright, et al., 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed. 2016 update) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading.") (footnotes omitted). Therefore, defendants named in an original complaint who are not named in a first amended or subsequent complaint are deemed "dismissed" from the case without further action.

ADA and section 1983, but against an entirely different set of CVSP employees.  The July 27 Complaint sued five CVSP employees, none of whom were sued in the original Complaint:  Mr. Verduzco and Mr. Vengocher, both "chief cooks"; Mr. Perez and Ms. Prieta, both supervisors; and Dr. Lee, the chief medical doctor.  Plaintiff claimed that Verduzco and Vengocher improperly required him to leave his cane and disability vest in their office when he worked in the kitchen; that Perez and Prieta knew that he was required to give up his cane and vest while working; and that Lee denied his request for seizure medication.  (Id. at 3-4).

However, the July 27 Complaint also included references to the original Complaint and its Defendants.  In light of the ambiguities on the face of the July 27 Complaint, the Court issued an "Order Requiring Clarification" in which it ordered Plaintiff to inform the Court whether he intended the July 27 Complaint to (1) supplement the original Complaint, (2) supersede the original Complaint, or (3) open an entirely new action.  ("Clarification Order," Dkt. No. 7).

In response to the Clarification Order, though not directly addressing it, on August 21, 2017, Plaintiff filed the instant August 21 Motion.  Although captioned as a "motion," the filing contains no argument or requests.  Instead, it appears to be another attempt to amend the pleading, as it includes a statement of jurisdiction, a list of Defendants, a statement of facts, a recitation of "legal claims," and a prayer for damages.  The allegations in the August 21 Motion purport to sue six CVSP

4

employees, some of whom, but not all, were sued in one or the other of the prior versions of Plaintiff's claims, i.e., staff cooks Viengochia and Verdusco[3] and supervisors Perez and Prieta (all of whom were named in the July 27 Complaint, but not the original Complaint); Marciano (who was named in the original Complaint, but not the July 27 Complaint); and correctional officer Moreno, named for the first time, whom Plaintiff alleges is in charge of the safety and security of the C facility kitchen. (August 21 Motion at 1-2). The August 21 Motion abandons the claims against Lee in the July 27 Complaint and the claims against Beatres and Seibel in the original Complaint.

Based upon the evolution of Plaintiff's claims, and the fact that some, but not all, of the Defendants in the original Complaint and the July 27 Complaint have been named in the most recent iteration of the claims, it appears that Plaintiff intended for the July 27 Complaint to be the First Amended Complaint in this matter, and for the August 21 Motion to be the Second Amended Complaint. The Court has separately ordered that the July 27 Complaint be filed as the First Amended Complaint. (See Dkt. No. 10). The Court now construes the "August 21 Motion" (Dkt. No. 7) as the Second Amended Complaint and DIRECTS the Court Clerk to re-file that document in a separate docket entry as the Second Amended Complaint.[4] Accordingly, the Second Amended Complaint supersedes

---

[3] The Court presumes that Defendants "Viengochia" and "Verdusco" in the August 21 Motion are Defendants "Vengocher" and "Verduzco" in the July 27 Complaint.

[4] For the remainder of this Order, the Court will refer to the "August 21 Motion" as the "Second Amended Complaint" or "SAC."

both the original Complaint and the First Amended Complaint, and is the current operative pleading.

### III.

### ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

As noted above, the Second Amended Complaint sues six CVSP employees: "staff supervisor cooks" Viengochia and Verdusco; "supervisor II cooks" Perez and Prieta, who supervise Viengochia and Verdusco; health care provider Marciano; and correctional officer Moreno. (SAC at 1-2). All Defendants are sued in both their individual and official capacities. (Id. at 3).

Plaintiff alleges that he is "mobility impaired" because his right leg is shorter than his left leg, and his left leg "sometimes gives out on [him]," (id.), which leaves him with a "severe a[b]normal limp." (Id. at 5). Plaintiff states that when he reported to work on December 10, 2015 with his "mobility impaired lime green vest and cane," Viengochia asked him what was "wrong" with him. (Id. at 3). Viengochia told Plaintiff that if he refused to work, he would issue a Rules Violation Report for failure to work at his assigned duties. (Id.). Plaintiff told Viengochia that he "wanted no problems and could not afford any disciplinary infractions." (Id.). Viengochia assigned Plaintiff to "pots and pans," which required him to stand for six or seven hours. (Id.). Viengochia allowed Plaintiff to sit on a "chair" made out of milk crates, but nonetheless confiscated his cane, as he did on a daily

basis for four months. (Id.). However, Viengochia allowed Plaintiff to pick up his cane at the end of the shift. (Id.).

When Verdusco filled in for Viengochia, he, too, would take away Plaintiff's cane every day, and return it to him at the end of the shift. (Id. at 4-5). Verdusco made verbal threats that he would write Plaintiff up in a disciplinary report if Plaintiff missed work or failed to comply with a "direct order." (Id. at 4). Verdusco, like Viengochia, knew that Plaintiff was mobility impaired because he had seen Plaintiff in his vest. (Id.).

Perez and Prieta are in "charge of the overall functions of the culinary kitchens" at CVSP. (Id. at 5). They check in daily on the "functions and operations" managed by their "cook supervisors," and have daily meetings with them. (Id.). Both Perez and Prieta saw Plaintiff and inquired about him. (Id.).

Moreno is in charge of the security of the C facility kitchen. (Id. at 6). He was aware of Plaintiff's "mobility impairment" vest and cane, but nonetheless condoned Viengochia's and Verdusco's actions "by allowing them to do as they please[d]" with Plaintiff. (Id.).

From the date of Plaintiff's initial medical consultation at CVSP, Marciano knew of Plaintiff's medical history, including his limp, his medical vest and cane, and his "chronos for lower bed/lower tier." (Id. at 6-7). Marciano also knew that Plaintiff "used to take sei[z]ure medication." (Id. at 6). Plaintiff asked

for Marciano's help in getting him out of his kitchen assignment, but Marciano "did nothing for [him] even after . . . [he] had a mild stroke while at work in the kitchen." (Id. at 7). Plaintiff was sent to the hospital by ambulance on January 10, 2016 because he was suffering from chest pains. (Id. at n.4).

Plaintiff alleges that "he was denied equal protection of the law" because of his race and mobility disability. (Id. at 8). Plaintiff further claims that he suffered physical pain and "mental anguish" for "well over four months" by being "forced to work beyond [his] means" in violation of Eighth and Fourteenth Amendment rights. (Id. at 8-9). Plaintiff seeks punitive damages of $20,000 from each Defendant, and "compensatory damages from each defendant for the sum of $1,000,000 each." (Id. at 8). Plaintiff "further seeks nominal damages for mental anguish from each defendant for the sum of $20,000 each." (Id. at 9).

## IV.

## DISCUSSION

Under 28 U.S.C. section 1915A(b), the Court must dismiss Plaintiff's Second Amended Complaint due to multiple pleading defects. However, the Court must grant a pro se litigant leave to amend his defective complaint unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). Accordingly, for the reasons

stated below, the Second Amended Complaint is DISMISSED with leave to amend.

**A.  The Second Amended Complaint Violates Federal Rule Of Civil Procedure 8**

Federal Rule of Civil Procedure 8 requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Each claim must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). Rule 8 can be violated when "too much" or "too little" is said. Knapp v. Hogan, 738 F.3d 1106, 1109 (9th Cir. 2013).

Here, the Second Amended Complaint does not comply with Rule 8. Although the "factual allegations" in the Second Amended Complaint against each of the six Defendants are concise and clearly organized, they are extremely vague and conclusory. The allegations do not explain which acts by which Defendants violated which particular federal constitutional rights. For example, although Plaintiff summarily claims that his due process rights were violated, he does not state whether he is bringing a due process claim against each of the six Defendants, or just one or some of them. Nor does he explain what process he believes he was due, or identify what each of the Defendants separately did to violate his due process rights. The complaint fails to provide Defendants with fair notice of the claims in a short, clear and

concise statement.  See Twombly, 550 U.S. at 555.  Accordingly, the Second Amended Complaint is dismissed, with leave to amend.

Dismissal is appropriate based solely on Plaintiff's failure to comply with Rule 8.  However, to the extent that the Court is able to discern claims that Plaintiff may be attempting to raise, the Court reviews these claims and the relevant law below.

**B.**   **Plaintiff's Official Capacity Claims Are Defective**

Plaintiff sues Defendants for damages in both their official and individual capacities.  (SAC at 3).  However, Plaintiff's official capacity claims are barred by the Eleventh Amendment and cannot proceed.

Pursuant to the Eleventh Amendment, states are immune from suits for damages under section 1983.  See Howlett v. Rose, 496 U.S. 356, 365 (1990); Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009) ("California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court.").  "[A] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself."  Flint v. Dennison, 488 F.3d 816, 824-25 (9th Cir. 2007) (citation omitted).  Therefore, state employees sued for damages in their official capacity are generally entitled to immunity.  Id. at 825.  However, a plaintiff may seek monetary damages under section 1983 from state employees in their individual capacity.  See Adler v. Lewis, 675 F.2d 1085, 1098 (9th Cir. 1982)

("State officials must be sued in their individual capacity in an action for monetary damages.").

Here, the Second Amended Complaint prays for monetary damages only, a remedy Plaintiff cannot obtain from state employees in their official capacity. (SAC at 8-9). Thus, to the extent that Plaintiff is seeking only monetary damages in this action, the official capacity claims are defective and must be dismissed.

**C.** **Plaintiff Fails To State An Equal Protection Claim**

The Equal Protection Clause broadly requires the government to treat similarly situated people equally. Hartman v. California Dep't of Corr. and Rehabilitation, 707 F.3d 1114, 1123 (9th Cir. 2013). To state an equal protection claim, typically a plaintiff must allege that "'defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class,'" such as a particular race or religion. Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (internal quotation marks and citation omitted) (emphasis in original); see also Byrd v. Maricopa Cnty. Sheriff's Dep't, 565 F.3d 1205, 1212 (9th Cir. 2009) (to state an equal protection claim, plaintiff "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent").

Where the governmental classification does not involve a suspect or protected class, or impinge upon a fundamental right, the classification will not "'run afoul of the Equal Protection Clause if there is a rational relationship between disparity of treatment and some legitimate governmental purpose.'" Nurre v. Whitehead, 580 F.3d 1067, 1098 (9th Cir. 2009) (quoting Cent. State Univ. v. Am. Ass'n of Univ. Professors, 526 U.S. 124, 127–28 (1999)). "Although disabled people do not constitute a suspect class, the Equal Protection Clause [nonetheless] prohibits irrational and invidious discrimination against them." Dare v. California, 191 F.3d 1167, 1174 (9th Cir. 1999). However, "a governmental policy that purposefully treats the disabled differently from the non-disabled need only be rationally related to legitimate legislative goals to pass constitutional muster." Martin v. California Dep't of Veterans Affairs, 560 F.3d 1042, 1049–50 (9th Cir. 2009) (internal quotation marks and citation omitted).

Courts have also recognized equal protection claims brought by a "class of one" where the plaintiff alleges that he or she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). A "class-of-one" equal protection claim must generally show that the difference in treatment resulted from non-discretionary state action. See Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591 (2008). As the Supreme Court explained,

> There are some forms of state action . . . which by their
> nature involve discretionary decisionmaking based on a
> vast array of subjective, individualized assessments.
> In such cases the rule that people should be "treated
> alike, under like circumstances and conditions" is not
> violated when one person is treated differently from
> others, because treating like individuals differently is
> an accepted consequence of the discretion granted. In
> such situations, allowing a challenge based on the
> arbitrary singling out of a particular person would
> undermine the very discretion that such state officials
> are entrusted to exercise.

Id. at 603 (explaining that the equal protection clause would not prohibit an officer from issuing a speeding ticket to one person and not others even for no discernable reason unless the decision to cite was based on the speeder's membership in a protected class); see also Towery v. Brewer, 672 F.3d 650, 660 (9th Cir. 2012) (the "class-of-one doctrine" does not apply to "forms of state action that involve discretionary decisionmaking"); Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1216 (10th Cir. 2011) (observing that successful "class of one" equal protection claims typically "have arisen from unfavorable zoning decisions, withholding of permits, and selective regulatory enforcement") (internal citation omitted).

Liberally construed, the Second Amended Complaint identifies two bases for Plaintiff's equal protection claims:  his race and

his disability. (Id. at 8).  However, the Second Amended Complaint contains absolutely no facts showing that Plaintiff was discriminated against because of his race -- in fact, it does not even identify Plaintiff's race.  While Plaintiff does allege some facts relating to his disability, it is unclear whether he is contending that he was discriminated against because he is disabled, and disabled prisoners as a class are treated differently than able-bodied prisoners with no rational justification for the difference, or that Plaintiff, as a "class of one," was irrationally treated differently than other disabled or able-bodied prisoners in some non-discretionary state action.  If Plaintiff wishes to pursue an equal protection claim, he must allege facts showing his membership in an identifiable group and clearly identify which acts he contends constitute discrimination, and who committed them.  Accordingly, the Second Amended Complaint is dismissed, with leave to amend.

**D.  <u>Plaintiff Fails To State A Due Process Claim</u>**

The Fourteenth Amendment provides that the State shall not "deprive any person of life, liberty or property, without due process of the law."  U.S. Const. amend. XIV, § 1.  To state a substantive due process claim, a plaintiff must allege that a state actor deprived him "of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'"  <u>Corales v. Bennett</u>, 567 F.3d 554, 568 (9th Cir. 2009) (quoting <u>United States v. Salerno</u>, 481 U.S. 739, 746 (1987)); <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th

14

Cir. 2000) (same).  To state a procedural due process claim, a plaintiff must demonstrate that he was denied substantive due process, then show that the procedures attendant upon the deprivation were constitutionally insufficient.  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459–60 (1989).

Similar to the deficiencies in Plaintiff's equal protection claim, it is unclear whether Plaintiff is asserting a due process claim against all, or just one or some, of the Defendants; what liberty or property interest Plaintiff claims to have been violated; whether Plaintiff is attempting to allege a substantive or procedural due process violation, or both; and what, specifically, Plaintiff believes each Defendant did to violate his due process rights.  Accordingly, the Second Amended Complaint is dismissed, with leave to amend.

**E.  <u>Plaintiff Fails To State A Deliberate Indifference Claim</u>**

To state an Eighth Amendment claim based on a prisoner's medical treatment, the prisoner must demonstrate that the defendant was "deliberately indifferent" to his "serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also West v. Atkins, 487 U.S. 42, 49 (1988).  To establish a "serious medical need," the prisoner must demonstrate that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Jett, 439 F.3d at 1096 (citation omitted); see also Morgan v. Morgensen, 465 F.3d

1041, 1045 (9th Cir. 2006) (the existence of a serious medical need
is determined by an objective standard).

To establish "deliberate indifference" to such a need, the
prisoner must demonstrate: "(a) a purposeful act or failure to
respond to a prisoner's pain or possible medical need, and (b) harm
caused by the indifference." Id. Deliberate indifference "may
appear when prison officials deny, delay or intentionally interfere
with medical treatment, or it may be shown by the way in which
prison physicians provide medigcal care." Id. (citations
omitted). The defendant must have been subjectively aware of a
serious risk of harm and must have consciously disregarded that
risk. See Farmer v. Brennan, 511 U.S. 825, 845 (1994).

"'[A] plaintiff's showing of nothing more than a difference
of medical opinion as to the need to pursue one course of treatment
over another [is] insufficient, as a matter of law, to establish
deliberate indifference.'" Wilhelm v. Rotman, 680 F.3d 1113, 1122
(9th Cir. 2012) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th
Cir. 1996)); see also Hamby v. Hammond, 821 F.3d 1085, 1092 (9th
Cir. 2016) ("[A] difference of opinion between a physician and the
prisoner -- or between medical professionals -- concerning what
medical care is appropriate does not amount to deliberate
indifference.") (quoting Snow v. McDaniel, 681 F.3d 978, 987 (9th
Cir. 2012), overruled in part on other grounds by Peralta v.
Dillard, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc)). Where a
physician defendant opts for one course of treatment over another,
or for no affirmative treatment at all, the plaintiff must show

that the option the physician chose was medically unacceptable under the circumstances, and that the physician chose it in conscious disregard of an excessive risk to the plaintiff's health. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

Although the SAC does not identify the specific Defendants against whom Plaintiff may be attempting to assert a deliberate indifference claim, the Court presumes that the list includes, at a minimum, Marciano. Plaintiff alleges that Marciano was aware of his medical history and condition, but nonetheless failed to intervene when Plaintiff asked him for "medical help to get out of [his] assignment" in the C facility kitchen. These spare allegations fail to state a deliberate indifference claim. First, it is not clear from the SAC that Plaintiff has or had a serious medical condition. Plaintiff does not allege any facts showing why his limp was so serious that the failure to exempt him from kitchen detail would likely result in significant additional injury or the unnecessary and wanton infliction of pain. Second, Plaintiff does not allege facts showing that Marciano's failure to exempt Plaintiff from his kitchen assignment was "medically unacceptable" and was "chosen in conscious disregard of an excessive risk" to Plaintiff's health. Hamby, 821 F.3d at 1092 (internal quotation marks and citation omitted).

Third, even though Plaintiff alleges that he suffered mental anxiety from being required to work in the kitchen, this allegation fails to show the "harm" necessary for a deliberate indifference claim because "an inmate may not pursue an emotional distress

injury unless accompanied by a physical injury" that is more than "de minimus." <u>Wood v. Idaho Dep't of Corr.</u>, 391 F. Supp. 2d 852, 867 (D. Idaho 2005); 42 U.S.C. § 1997e(e); <u>Oliver v. Keller</u>, 289 F.3d 623, 629 (9th Cir. 2002) (pretrial detainee failed to state deliberate indifference claim for "mental and emotional injury" where the only physical injuries alleged were a canker sore and back and leg pain). Plaintiff does not sufficiently describe any plausible physical pain he may have endured as a consequence of his job. Indeed, Plaintiff admits that he was allowed to sit on a makeshift chair while working, and that his cane was returned to him at the end of every shift. Accordingly, the Second Amended Complaint is dismissed, with leave to amend.

## F.   <u>Plaintiff Fails To State A Cruel And Unusual Punishment Claim</u>

Alternatively, it is possible that Plaintiff's Eighth Amendment claim is based on the contention that his work assignment as a kitchen lineman constitutes "cruel and unusual punishment" because it requires him to lift heavy trays and pans and push heavy carts. This ground for an Eighth Amendment claim also fails.

Infliction of suffering on prisoners that is "totally without penological justification" violates the Eighth Amendment. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981). Only "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986) (internal quotation marks and citation omitted). The punishment must constitute "shocking and barbarous

treatment." <u>Grummett v. Rushen</u>, 779 F.2d 491, 494 n.1 (9th Cir. 1985). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." <u>Whitley</u>, 475 U.S. at 319. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." <u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991) (internal quotation marks and citation omitted). Accordingly, "courts considering a prisoner's [cruel and unusual punishment] claim must ask: 1) if the officials acted with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." <u>Somers v. Thurman</u>, 109 F.3d 614, 622 (9th Cir. 1997) (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)).

The Second Amended Complaint simply does not provide any facts about Plaintiff's work detail, or his alleged inability to perform the tasks required of him, to establish that requiring him to work as a kitchen lineman was "shocking and barbarous treatment" with no penological justification. Additionally, as with the SAC's other claims, the SAC does not identify which Defendants allegedly violated Plaintiff's Eighth Amendment rights, or explain why each one is individually liable for any pain Plaintiff suffered as a consequence of his job. Accordingly, the Second Amended Complaint is dismissed, with leave to amend.

\\

\\

\\

**G.  Plaintiff Fails To State A Claim Against The Supervisory
Defendants**

To demonstrate a civil rights action against a government
official, a plaintiff must show either the official's direct,
personal participation in the harm, or some sufficiently direct
connection between the official's conduct and the alleged
constitutional violation.  See Starr v. Baca, 652 F.3d 1202, 1205-
06 (9th Cir. 2011).  A supervising officer must personally take
some action against the plaintiff or "set in motion a series of
acts by others . . . which [s]he knew or reasonably should have
known, would cause others to inflict the constitutional injury" on
the plaintiff.  Larez v. City of Los Angeles, 946 F.2d 630, 646
(9th Cir. 1991) (internal quotations omitted).  Government
officials may not be held liable for the unconstitutional conduct
of their subordinates.  See Ashcroft v. Iqbal, 556 U.S. 662, 676
(2009).  Rather, a supervisor may be held accountable only "for
his own culpable action or inaction in the training, supervision,
or control of his subordinates, for his acquiescence in the
constitutional deprivations of which the complaint is made, or for
conduct that showed a reckless or callous indifference to the
rights of others."  Preschooler II v. Clark County Bd. of Trustees,
479 F.3d 1175, 1183 (9th Cir. 2007).

The SAC fails to state a supervisory claim against Perez,
Prieta or Moreno.  Plaintiff merely alleges that Perez and Prieta,
who supervised Viengochia and Verdusco, "saw" Plaintiff with his
vest and cane and "inquired" about him.  (Id. at 5).  Making an

inquiry about a prisoner does not, by itself, show a violation of the prisoner's constitutional rights. Plaintiff appears to imply that because Perez and Prieta supervise Viengochia and Verdusco, they should be responsible for their subordinates' actions. However, liability under section 1983 arises only for acts committed by each Defendant personally. A supervisor is not liable merely because a subordinate violated a plaintiff's constitutional rights.

Plaintiff further alleges that Moreno, who was "in charge of the safety and security of the 'C' facility kitchen" where Plaintiff worked, "condoned" Viengochia's and Verdusco's actions toward Plaintiff because he knew what they were doing but still allowed them to "do what they pleased." (Id. at 6). However, the only facts alleged against Viengochia and Verdusco are that they confiscated Plaintiff's cane, which they returned to him at the end of his shift. Even if Moreno's responsibilities for the "safety and security" of the C facility kitchen authorized him to intervene in individual work assignments, which Plaintiff does not allege and which seems questionable, Plaintiff has not explained why confiscating his cane presented a security threat. Accordingly, the Second Amended Complaint is dismissed, with leave to amend.

**IV.**

**CONCLUSION**

For the reasons stated above, the Second Amended Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue

this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a Third Amended Complaint. In any amended complaint, Plaintiff shall **cure the defects** described above. **Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the SAC**. The Third Amended Complaint, if any, shall be complete in itself and shall not refer in any manner to the original complaint, the First Amended Complaint, or the Second Amended Complaint. Its caption page shall bear the designation "Third Amended Complaint" and the case number assigned to this action. **If Plaintiff chooses to pursue this action, he shall not file the Third Amended Complaint as a "motion," but shall simply caption the document as the "Third Amended Complaint."**

The Third Amended Complaint should be short and concise. In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and the Defendant (by name) against whom the claim is asserted, and make clear what specific factual allegations support each separate claim. Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant

details. It is not necessary for Plaintiff to cite case law or include legal argument.

**Plaintiff is explicitly cautioned that failure to timely file a Third Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey Court orders pursuant to Federal Rule of Civil Procedure 41(b). <u>Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiffs' convenience. If Plaintiff utilizes the Notice of Dismissal, he is instructed to clearly state whether he is dismissing the entire action or only certain claims or certain Defendants.</u>**

DATED: September 18, 2017

_____
/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.

23